**COUNTY OF LAKE, Appellant,**

v.

**James COURTNEY, III, Respondent.**

**No. C0–89–799.**

Court of Appeals of Minnesota.

Feb. 13, 1990.

Review Denied April 13, 1990.

Fred T. Friedman, for respondent.

James Courtney, III, Duluth, pro se.

Hubert H. Humphrey, III, Atty. Gen. A.W. Clapp, III, Sp. Asst. Atty. Gen., St. Paul, for amicus curiae, Minnesota Dept. of Natural Resources.

Considered and decided by KALITOWSKI, P.J., and HUSPENI and GARDEBRING, JJ.

## OPINION

GARDEBRING, Judge.

This is an appeal from the trial court's judgment denying appellant's request for injunctive relief forcing respondent to remove or move respondent's cabin on Lake Superior. The trial court concluded respondent's actions constituted remodeling as defined in the relevant Lake County ordinance and therefore no zoning permit or variance was required. We affirm in part, reverse in part and remand.

## FACTS

Respondent James Courtney owned a one-story cabin that did not conform to the 75–foot setback requirements of the relevant Lake County zoning ordinance. The structure was entitled to grandfather rights as a nonconformity. Lake County Zoning Ordinance, Ordinance No. 12, § 3.28 (1976).

In 1986 Courtney applied for a building permit to construct a new two-story house on the same property. The permit was denied. At that point, he was told a variance would be required because of the setback requirement and therefore he submitted a variance application. After a hearing on July 14, 1986, the board denied his variance request because the building setback was insufficient and no hardship was shown at the existing location. On August 28, 1986, Courtney requested a rehearing on the variance application, but four weeks later he withdrew the rehearing request.

In March 1987 he chose to remodel the existing cabin. Before beginning construc-

Bruce L. Anderson, Lake County Atty. and Richard W. Swanson, Sp. Asst. County Atty., Marine on St. Croix, for appellant.

tion, he contacted by telephone the county zoning officer, Richard Sigel, to determine the necessary requirements for a one-story house. The two disagree about the content of their conversation. Sigel claims it was a general discussion about remodeling a nonconforming structure, while Courtney testified Sigel told him remodeling was permitted if ground coverage area was not increased.

In April 1987 Courtney removed most of the walls and roof of the structure and started to build a new structure on the existing foundation pillars and timbers. The ground coverage area was not changed, though the roof line is six feet higher than the prior structure. No zoning permit or variance was obtained for this project.

Lake County officials discovered the construction and Courtney was ordered to cease and desist from his construction activity on April 22, 1987. In June 1987 the county commenced this action for a permanent injunction to restrain Courtney from maintaining or erecting the building in question. The trial court issued a temporary injunction on June 27, 1987.

After the trial in January 1989, the trial court concluded Courtney's actions constituted remodeling as defined in the ordinance and no zoning permit or variance was required. The temporary injunction was dissolved. This appeal followed.

### ISSUES

1. Did the trial court err in concluding the Lake County ordinance did not require a building permit or variance for respondent's construction?

2. Was Lake County's denial of respondent's variance arbitrary and capricious?

3. Is Lake County entitled to a permanent injunction requiring respondent to remove his new structure?

### ANALYSIS

### I.

Interpretation of an existing zoning ordinance is a question of law.

*Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604, 608 (Minn.1980). On appeal, this court need not defer to the trial court's conclusion when reviewing questions of law. *Frost–Benco Electric Association v. Minnesota Public Utilities Commission,* 358 N.W.2d 639, 642 (Minn. 1984).

This case involves the interpretation of portions of the Lake County zoning ordinance. There are two applicable provisions: Lake County Ordinance, Ordinance No. 12, arts. 26 and 30. Article 30 addresses the continuance of nonconformities, and article 26 addresses the issuance of permits. Three rules of construction guide our interpretation: 1) zoning ordinances must be construed according to their plain and ordinary meaning; 2) zoning ordinances must be construed strictly against the county and in favor of the property owner; and 3) ordinances must be considered in light of their underlying policy objectives. *Frank's Nursery,* 295 N.W.2d at 608–09.

#### A. Article 30

The definition of "non-conformity" is found in Lake County Zoning Ordinance, Ordinance No. 12, § 3.28:

*Non-conformity:* Any legal use, structure or parcel of land already in existence, recorded, or authorized before the adoption of this ordinance that would not have been permitted to become established under the terms of the ordinance as now written, if the ordinance had been in effect prior to the date it was established, recorded or authorized.

It is undisputed Courtney's original cabin fell within this definition. His cabin was set back only 50 feet from the normal high water mark of Lake Superior. This is in violation of the 75 foot setback provision. Lake County Zoning Ordinance, Ordinance No. 12, § 7.05(b) (1976).

Additional relevant sections include:

30.00 *Intent:* It is the intent of this article to regulate non-conformities and to provide for their gradual elimination.

30.01 *Non–Conformities:* Any non-conformity, including the lawful use or occupation of land or premises existing at the time of adoption of this ordinance may be continued, subject to the provisions of this ordinance.

\*     \*   .   \*     \*     \*     \*

30.03 *Conditions:* The following conditions shall govern the continuance of non-conformities:

a) No non-conformity shall be enlarged, increased, extended or moved unless the use is changed to one permitted pursuant to the provisions of this ordinance.

b) Any non-structural repairs and incidental alterations for normal maintenance may be made. Structural alterations required by law or ordinance shall be allowed.

■ Regarding section 30.03(a), the county argues, and we agree, that the exception allowing enlargement of a nonconformity is limited to instances in which the *use* is changed to a permitted one. Since there is no change in use involved under these facts, the exception is not applicable in this case.

The "use" defined in section 3.47 of the ordinance as the "specific purpose for which \* \* \* a building is designed \* \* \*" refers to Courtney's use of the structure as a residence, which, in this instance, is a conforming use. *See* Lake County Zoning Ordinance, Ordinance No. 12, § 3.47 (1976). The record indicates the roof line of Courtney's new structure is six feet higher than the previous structure, which is a vertical enlargement of the nonconformity, and therefore prohibited by section 30.03(a). The plain and ordinary meaning of this section leads to no other reasonable interpretation.

Nonetheless, Courtney urges us to conclude section 30.03(a) is limited in its application to *use* nonconformities, rather than to other nonconformities (such as setbacks). He asserts section 30.03(a) prohibits expansion of nonconforming uses, but does not affect a nonconforming structure with a conforming use. Since Courtney's use of his cabin has always been permitted, he argues the prohibition against enlargement of nonconformities would be misapplied in this instance.

We disagree. In the first place, Courtney's interpretation of section 30.03(a) tortures its plain and ordinary meaning. It is evident from the language of section 30.03(a) that enlarging, increasing, extending, or moving a nonconformity is impermissible. We recognize that if the use is changed to a permissible one, pursuant to the exclusion, the nonconformity may be continued. That situation, however, does not exist here. Hence, in enlarging his cabin Courtney violated section 30.03(a).

■ Second, our conclusion is buttressed by the underlying policy of the Lake County ordinance. Pursuant to section 30.03(a), Lake County can prohibit the expansion or enlargement of Courtney's nonconforming cabin. *See County of Freeborn v. Claussen,* 295 Minn. 96, 99, 203 N.W.2d 323, 325 (1972).[1] The drafters of the ordinance intended to "regulate existing non-conformities and to provide for their gradual elimination." Lake County Zoning Ordinance, Ordinance No. 12, § 30.00 (1976). We believe the county's interpretation of section 30.03(a) advances the ordinance's underlying policy of regulating existing nonconformities. In contrast, Courtney's interpretation thwarts the county's regulation and its intended gradual elimination of nonconformities. If section 30.03(a) were not to apply to structure nonconformities, as Courtney insists, then the county's power to regulate nonconformities such as Courtney's cabin would be emasculated.

---

1. We recognize that *County of Freeborn* involved a use and not a structure nonconformity as this case does. The public policy of prohibiting expansion or enlargement of use nonconformities, nonetheless, applies with equal force to structure nonconformities. The policy underlying these prohibitions is to increase the likelihood that nonconformities "will in time be eliminated due to obsolescence, exhaustion, or destruction" and to "lead to a uniform use of the land consistent with the overall comprehensive zoning plan." *County of Freeborn,* 295 Minn. at 99, 203 N.W.2d at 325.

█ The county argues Courtney's construction also violated Lake County Zoning Ordinance, Ordinance No. 12, § 30.03(b). As a condition for the continuance of nonconformities, section 30.03(b) states:

Any non-structural repairs and incidental alterations for normal maintenance may be made. Structural alterations required by law or ordinance shall be allowed.

The county asserts that, according to this provision, only nonstructural repairs and incidental alterations for normal maintenance are permitted to nonconforming structures. Moreover, structural alterations, which Courtney admits describe his construction, are only allowed to nonconforming structures when required by law or ordinance.

However, Courtney interprets section 30.03(b) to be merely permissive. In other words, nonstructural repairs and incidental alterations are only illustrative of what a landowner may do with his nonconforming structures; they are not, however, exclusive examples of permitted construction.

We agree with the county's interpretation. Read in conjunction with section 30.-03(a), this provision prohibits structural alterations that enlarge or increase the nonconformity unless the alterations are required by law or ordinance. In this case, Courtney's construction was not required by law. Moreover, the common and ordinary meaning of structural alteration plainly includes removing and replacing three walls and the roof of Courtney's structure.

We note the trial court concluded in its memorandum that section 30.03(b) cannot reasonably be construed to prohibit structural alterations and repairs. Upon further scrutiny of its analysis, however, we observe the trial court presumed that if the term remodeling includes structural alterations then Courtney's construction did not violate section 30.03(b). This presumption is faulty and led the trial court to its erroneous conclusion.

### B. Article 26

Article 26 requires that a land use permit be obtained prior to altering a structure.

No structure shall be built, moved or structurally altered, and no land use shall be substantially altered until a zoning permit has been issued by the County Zoning Officer. The Officer shall not issue a permit for a structure or a use not in conformity with the requirement of this ordinance.

Lake County Zoning Ordinance, Ordinance No. 12, § 26.02(a) (1976). An exception to this requirement provides:

No permit shall be required for maintenance, repair or remodeling where the building coverage area is not increased.

Lake County Zoning Ordinance, Ordinance No. 12, § 26.02(d) (1976).

█ We need not examine in detail the impact of Article 26 upon the outcome of this case. One aspect of it needs to be noted, however. It is apparent that Article 26, which involves the issuance of permits, is independent of Article 30, which involves the continuance of nonconformities. Therefore, the question of whether Courtney's construction was indeed remodeling, as he insists, and consequently required no permit, is distinct from the question of whether his construction violated sections 30.03(a) and (b). Since we hold that Courtney's construction of his new cabin violated sections 30.03(a) and (b) we need not reach the issue of whether or not a permit was required.

### II.

█ In its memorandum the trial court concluded the Lake County Board's denial of Courtney's application for a variance in July 1986 was not arbitrary and capricious. We agree. The county has broad discretionary power to deny an application for a variance. *Tuckner v. Township of May*, 419 N.W.2d 836, 838 (Minn.Ct. App.1988). Upon review of the record, it is evident Courtney failed to meet his burden of showing that approval of the variance was appropriate.

### III.

Since we conclude the trial court erred in its interpretation of Lake County's ordinance, the county urges this court to grant an injunction requiring Courtney to remove

his building from the property or move it to another permissible location. We deny this request. We recognize there may be grounds for such relief and that the Lake County Board of Commissioners is authorized to institute appropriate action to abate violations. Lake County Zoning Ordinance, Ordinance No. 12, § 32.03 (1976). The trial court must first consider the issues raised by Courtney's claims of unconstitutional taking and equitable estoppel, which were not reached by the trial court. Further, upon remand the trial court should make findings of fact and conclusions of law on the propriety of issuing a permanent injunction against Courtney. We therefore remand this case for further proceedings consistent with this opinion.

## DECISION

The trial court erred in concluding Courtney's alteration of his structure did not violate the Lake County ordinance. We agree with the trial court that denial of Courtney's variance application was not arbitrary and capricious. Therefore, we remand to the trial court for consideration of the merits of Courtney's claims of estoppel and constitutional taking. Finally, the trial court should determine whether permanent injunctive relief is appropriate.

Affirmed in part, reversed in part and remanded.