Gina Marie **GERDING**, Petitioner, Appellant,

v.

**COMMISSIONER OF PUBLIC SAFETY**, Respondent.

No. C7–00–2185.

Court of Appeals of Minnesota.

June 12, 2001.

Review Denied Aug. 15, 2001.

Samuel A. McCloud, Kelly Vince Griffitts, Shakopee, MN, (for appellant).

Michael A. Hatch, Attorney General, Darren L. Dejong, Assistant Attorney General, State of Minnesota, St. Paul, MN, (for respondent).

Considered and decided by WILLIS, Presiding Judge, HANSON, Judge, and FOLEY,* Judge.

## OPINION

HANSON, Judge.

On appeal from an order sustaining the revocation of her driver's license, appellant challenges the district court's conclusion that a traffic stop did not violate her constitutional rights. She argues that the hanging of an object from her rear vision mirror was not unlawful, and thus did not justify the stop, because there was no evidence that the object obstructed her vision. She also argues that the information the officer received from an identified citi-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

zen informant was insufficient to provide the officer with a reasonable suspicion of criminal activity. We affirm.

## FACTS

On October 20, 1999, a citizen informant reported to Officer Cantu that she saw several individuals in a motel parking lot, standing around a silver Saturn with open containers of alcohol. When Cantu arrived, he saw a Ford Escort leaving the parking lot. He pulled up behind it and noticed an object hanging from its rear vision mirror. He stopped the car based on that object. He ultimately arrested the driver, appellant Gina Marie Gerding, for driving under the influence of alcohol.

Appellant sought judicial review of the subsequent revocation of her driver's license. At the implied consent hearing, appellant challenged the legality of the stop. The district court held that Cantu was justified in stopping the car based on his observation of an object hanging from the car's rear vision mirror, in violation of Minn.Stat. § 169.71, subd. 1 (1998). The court also held that the information Cantu received from the citizen informant provided a legitimate, independent basis for the stop.

## ISSUES

1. Does Minn.Stat. § 169.71, subd. 1 (1998) prohibit the suspension of any object between the driver and the windshield, regardless of whether that object obstructs the driver's vision?

2. Was an identified private citizen's tip that a group of people had open containers in a parking lot sufficient

to provide a legitimate basis for a stop?

## ANALYSIS

■ The Fourth Amendment to the United States Constitution and Article I of the Minnesota Constitution prohibit unreasonable searches and seizures by the government. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Under the Fourth Amendment, police officers may, however, make limited, warrantless investigative stops of vehicles when there is a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *State v. Pike*, 551 N.W.2d 919, 921–22 (Minn.1996).

■ While the factual basis required to support a stop for a routine traffic check is minimal, the stop must not be the product of "mere whim, caprice, or idle curiosity." *State v. Harris*, 572 N.W.2d 333, 337 (Minn.App.1997) (quotation omitted). Instead, it must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Pike*, 551 N.W.2d at 921–22 (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). "In reviewing a district court's determinations of the legality of a limited investigatory stop, we review questions of reasonable suspicion de novo." *State v. Britton*, 604 N.W.2d 84, 87 (Minn.2000) (citation omitted).

### I.

■ Gerding argues that Minn.Stat. § 169.71, subd. 1 prohibits objects suspended from the rear vision mirror only if the object obstructs the driver's proper vision.[1] The district court concluded that

1. At oral argument, appellant argued that the statute would be unconstitutional if it were otherwise interpreted. To challenge a statute's constitutionality, a party must raise the

issue before the lower court and notify the attorney general of the intended challenge in a timely fashion. Minn. R. Civ.App. P. 144; *Irwin v. Surdyk's Liquor*, 599 N.W.2d 132, 137

the statute's plain meaning prohibits suspending any object whatsoever, without regard to whether it obstructs the driver's vision.

 The interpretation of statutes is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998). When construing a statute, our goal is to ascertain and effectuate the legislature's intent. *Tuma v. Comm'r of Econ. Sec.,* 386 N.W.2d 702, 706 (Minn. 1986). This court must give effect to a statute's plain meaning when the words are unambiguous. *Id.*

> Minn.Stat. § 169.71, subd. 1 provides:
>
> No person shall drive or operate any motor vehicle with a windshield cracked or discolored to an extent to limit or obstruct proper vision, or, except for law enforcement vehicles, *with any objects suspended between the driver and the windshield, other than sun visors and rear vision mirrors,* or with any sign, poster, or other nontransparent material upon the front windshield, sidewings, side or rear windows of such vehicle, other than a certificate or other paper required to be so displayed by law, or authorized by the state director of the division of emergency management, or the commissioner of public safety.

(Emphasis added).

The statute's plain meaning is unambiguous, effective and certain: while some window cracks and discoloration are permissible, *no* objects other than sun visors or rearview mirrors may be suspended between the driver and the windshield. The words in the statute—"to an extent to limit or obstruct proper vision"—modify only "a windshield cracked or discolored,"

they do not modify "any objects suspended."

This plain reading is supported by the statute's legislative history. In 1959, the legislature added the critical words, shown in italics:

> No person shall drive or operate any motor vehicle with a windshield cracked or discolored to an extent to limit or obstruct proper vision, *or with any objects suspended between the driver and windshield, other than sun visors and rear vision mirrors,* or with any sign, * * *.

1959 Minn. Laws ch. 174, § 1; 1959 Minn. Laws ch. 521, § 11. Then, in 1993, the legislature added the following italicized exception:

> No person shall drive or operate any motor vehicle with a windshield cracked or discolored to an extent to limit or obstruct proper vision, or, *except for law enforcement vehicles,*with any objects suspended between the driver and windshield, other than sun visors and rear vision mirrors, or with any sign, * * *.

1993 Minn. Laws ch. 26, § 10.

 Each of these amendments carves out specific exceptions and must be read to exclude other exceptions. Thus, the statute prohibits all suspended objects not covered by the specific exceptions. The first amendment defines the permissible objects that may be suspended between the driver and the windshield. The second amendment further separates the provision against cracked or discolored windshields that obstruct vision from the provision prohibiting suspended objects.

 Here, there is no claim that the stop was unconstitutionally pretextual.[2] Further, there is no challenge to the district court's finding that Cantu observed

---

(Minn.1999). Appellant did not challenge the constitutionality of the statute in the district court or in her appellate briefs. As a result, we will not address this issue.

**2.** The Fourteenth Amendment's equal protec-

the suspended object before stopping Gerding.[3] Because the object suspended from Gerding's rear vision mirror violated Minn.Stat. § 169.71, subd. 1, the officer's stop was justified. *See State v. George,* 557 N.W.2d 575, 578 (Minn.1997) ("Ordinarily, if an officer observes a violation of a traffic law, however insignificant, the officer has an objective basis for stopping the vehicle.").

## II.

Because we conclude that the suspension of an object from Gerding's rear vision mirror justified the stop, we need not consider whether the information from the citizen informant provided an independent basis for the stop.

## DECISION

When the officer observed an object suspended from Gerding's rear vision mirror, in violation of Minn.Stat. § 169.71, subd. 1, he had an objective basis for stopping Gerding's vehicle.

**Affirmed.**

---

tion clause prohibits intentional, discriminatory enforcement of laws. *State v. Hyland,* 431 N.W.2d 868, 872 (Minn.App.1988). A stop that amounts to intentional, discriminatory enforcement of the law is unconstitutionally pretextual. In this context, pretextual does not mean that the officer's real motivation for the stop differed from the reason given to justify the stop. Absent discriminatory enforcement, a stop with an objective basis is lawful regardless of the officer's subjective motivations. *State v. Everett,* 472 N.W.2d 864, 867 (Minn.1991) (rejecting a broader concept of "pretextual" previously enunciated in *State v. Hoven,* 269 N.W.2d 849 (Minn. 1978)).

3. The parties cite to four unpublished opinions of this court that involved stops for violation of Minn.Stat. § 169.71, subd. 1. Of course, these opinions are not precedential. *Dynamic Air, Inc. v. Bloch,* 502 N.W.2d 796, 800 (Minn.App.1993). Moreover, none of these cases specifically addressed the proper interpretation of the statute; each affirmed the district court's determination of the legality of the stop under its peculiar facts. Three turned on whether the stop was pretextual of a motivation to racially discriminate. *See State v. Klemenko,* No. C0–00–584, 2000 WL 1528688 (Minn.App. Oct. 17, 2000); *State v. Pacas,* No. C7–99–1109, 1999 WL 1256374 (Minn.App. Dec. 28, 1999); and *State v. Hardy,* No. C3–94–813, 1994 WL 495094 (Minn. App. Sept. 13, 1994). The fourth turned on the credibility of the police officer's claim that he actually saw the object before the stop. *See State v. Patterson,* No. C6–97–1730, 1998 WL 372778 (Minn.App. July 7, 1998).